**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MATTHEW FARRELL,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| | |
| **v.** | |
| | |
| **NORTHAMPTON COUNTY,** | **NO.  11-3665** |
| **C.O. RYAN KELLY,** | |
| **DANIEL PICCONE,** | |
| **JOHN STOFFA,** | |
| **ROBERT MEYERS,** | |
| **TODD BUSKIRK,** | |
| **JOHN CONKLIN,** | |
| **WILLIAM SWEENEY,** | |
| **CONRAD LAMONT,** | |
| **JOHN DOES I-X, and** | |
| **PAUL SERRANO,** | |
| **Defendants.** | |

**DuBois, J.**                                                                                  **July 31, 2015**

**M E M O R A N D U M**

## I.      INTRODUCTION

This is a prisoner civil rights case arising out of an attack on plaintiff Matthew Farrell

while he was incarcerated at Northampton County Prison ("NCP"). Plaintiff asserts claims under

42 U.S.C. § 1983 against nine individual defendants[1] and Northampton County for constitutional

violations arising out of defendants' alleged failure to protect him from the attack, and state law

claims for intentional infliction of emotional distress, assault, battery, and civil conspiracy.

---

[1]      Farrell also brings claims against ten unnamed John Doe defendants. "The use of John Doe defendants is permissible until reasonable discovery permits the true defendants to be identified." *Guyton v. Bacher*, No. 12-27, 2014 WL 3942813, at *5 (W.D. Pa. Aug. 12, 2014) (quoting *Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 250 (3d Cir. 2009)) (internal quotation marks omitted). After that time, the Court may exercise its power under Federal Rule of Civil Procedure 21 to dismiss John Doe defendants from the case.

The John Doe defendants in this case remain unidentified, and discovery has been completed. Accordingly, the Court dismisses the John Doe defendants.

Presently before the Court is the Motion for Summary Judgment of defendants Northampton County, Ryan Kelly, Nathan Piccone,[2] John Stoffa, Robert Meyers, Todd Buskirk, John Conklin,[3] William Sweeney, and Conrad Lamont (collectively, "Northampton defendants").[4] For the reasons that follow, the Court grants in part and denies in part Northampton defendants' Motion for Summary Judgment.

## II.    BACKGROUND

### A.    Factual Background[5]

#### 1.    Incident of April 3, 2011 and Farrell's Grievance Against Corrections Officers[6]

In April 2011, Farrell was an inmate housed at NCP. On or around April 3, 2011, Farrell was in the intake area of NCP and asked Corrections Officer Shaffer[7] if he could make a

---

[2]    In his Amended Complaint, Farrell identifies this defendant as "Daniel Piccone." Northampton defendants advised that Daniel Piccone is actually Corrections Officer Nathan Piccone, and Farrell agrees. Thus, the Court substitutes Nathan Piccone for defendant Daniel Piccone.

[3]    Farrell concedes that there is no evidence of defendant John Conklin's involvement in any issues material to this action and he agrees to Conklin's dismissal. (Pl.'s An. Defs.' Statement of Purportedly Material Uncontested Facts 1 n.1.) The Court thus grants Northampton defendants' Motion for Summary Judgment as to defendant Conklin and dismisses him from the case.

[4]    The Motion for Summary Judgment was filed on behalf of all defendants except Paul Serrano.

[5]    As required on a motion for summary judgment, the facts set forth in this Memorandum are presented in the light most favorable to Farrell, the non-moving party. The Court refers to the parties' statements of material facts where those facts are not controverted. Where they are controverted, the factual disputes are noted.

[6]    Northampton defendants have not presented evidence on this incident and thus the Court refers to evidence presented by Farrell in this section of the Memorandum.

telephone call. (Farrell Dep. Tr. 41:8–11, 19–20; Pl. Resp. in Opposition, Ex. M.) According to
Farrell, Shaffer refused his request, ordered him into the holding cell, and then pushed him to the
floor and handcuffed him. (Farrell Dep. Tr. 41:13–16.) Farrell contends that several other
corrections officers, including defendant Piccone, joined Shaffer and began to beat him. (*Id.*; Pl.
Resp. in Opposition, Ex. M.) Farrell testified that defendant Kelly, along with Piccone, took him
to the medical unit for treatment after the incident, during which time, according to Farrell, Kelly
and Piccone were "standing by each other, laughing, smiling…." (Farrell Dep. Tr. 53:10–12.) On
April 3, 2011, Farrell filed a grievance against Piccone and several other corections officers not
named as defendants with respect to this incident. (Pl. Resp. in Opposition, Ex. M.)

### 2. Defendant Paul Serrano's Attack on Farrell

On April 24, 2011, Farrell was housed in NCP's Restricted Housing Unit ("RHU").
(Defs.' Statement of Material Uncontested Facts ("Defs.' SOF") ¶¶ 1–2.) At about 6:40 p.m. on
that day, Kelly released Farrell from his cell in the RHU. (Pl.'s Counter-Statement of Facts
("Pl.'s SOF") 2.) Shortly before that time, Farrell observed Kelly speaking with defendant-
inmate Paul Serrano, who was in his cell. (Defs.' SOF ¶ 9; Pl.'s SOF 3.) After releasing Farrell,
Kelly exited the cell block and closed and locked the "riot gate" behind him. (Pl.'s SOF 2.)

Shortly after Kelly exited the block, Farrell was speaking with another inmate and heard
his name being called down the cell block. (Farrell Dep. Tr. 63:8, 65:23–66:6.) At that time,
around 6:45 p.m., Farrell began to walk down the length of the cell block. (Pl.'s SOF 3.) As
Farrell passed Serrano's cell, Farrell heard a "popping" sound, at which point Serrano exited his

---

[7]     Shaffer is not a party to this suit.

cell and lunged at Farrell with a filed off brush handle, commonly referred to as a "shank." (Defs.' SOF ¶¶ 11, 14; Pl.'s SOF 3; *see also* Farrell Dep. Tr. 66:1–6; Pl. Resp. in Opposition, Ex. CDR-B (surveillance video of attack).) Serrano pursued Farrell down the length of the cell block until Farrell was backed into the locked riot gate, and struck Farrell in the head, face, and neck with the shank. (Pl.'s SOF 3; Farrell Dep. Tr. 67:11–17.) Seconds after Farrell hit the riot gate, corrections officers, including Kelly, entered the cell block and restrained Serrano. (Defs.' SOF ¶ 15; Pl. Resp. in Opposition, Ex. CDR-B.) Following the incident, Farrell received medical treatment for "a large cut on the right side of his face, two puncture wounds on his right shoulder, and a puncture wound on the right side of his head." (Pl. Resp. in Opposition, Ex. B, Report of Investigator Christopher Naugle, at NCP001038.)

Farrell contends that Serrano's attack was planned in collaboration with Corrections Officers Kelly, Piccone, and Lamont in retaliation for the grievance he filed against Piccone for the April 3, 2011 incident. Farrell contends that Serrano's attack was planned and points to a statement from inmate Michael Torres, Jr. that Serrano approached him the day before the attack to see if he or his "Latin Kings friends" could provide him with a shank. (Pl. Resp. in Opposition, Ex. B, at NCP001040.) Northampton defendants contend, however, that Serrano spontaneously attacked Farrell because he was angry that Farrell was making noise and disturbing him while he was trying to teach his Islamic faith and because Serrano had found Farrell annoying on other occasions. (Defs.' SOF ¶ 17; Mot. Summ. J., Ex. C., Statement of Serrano.)

### B.    Procedural Background

On September 22, 2011, Farrell filed his *pro se* Complaint asserting claims against

defendants Kelly and Northampton County. On April 27, 2012, this Court dismissed the case with prejudice due to Farrell's failure to comply with Court orders and Local Civil Rule 5.1(b).[8] Farrell subsequently filed a Motion to Seek Leave to Reopen Case, which the Court granted on August 13, 2012. In that order, the Court also granted Farrell leave to file an amended complaint incorporating the allegations that he raised in a related action against Northampton County (Civil Action No. 12-4177).[9]

On October 18, 2012, Colin Monahan entered his appearance on behalf of Farrell. Farrell then filed his counseled Amended Complaint on November 21, 2012 against Northampton County; Corrections Officers Ryan Kelly, Nathan Piccone, Conrad Lamont, and John Does I–X; John Stoffa (Northampton County Executive); Robert Meyers (Northampton County Director of Corrections); Todd Buskirk (Acting Warden of NCP); William Sweeney (Deputy Warden of NCP); and John Conklin (Northampton County Director of Administration). The Court granted Farrell's Motion to Amend the Caption to add Paul Serrano as a defendant on June 18, 2013.

In his Amended Complaint, Farrell asserts the following claims:[10]

- Count I: § 1983 *Monell* (against Northampton defendants and Serrano)
- Count II: § 1983 Civil Conspiracy (against defendants Kelly, Piccone, Lamont, and Serrano)
- Count III: § 1983 Failure to Intervene (against defendants Kelly, Lamont, and John Does I–X)

---

[8]     Local Civil Rule 5.1(b) provides that, "Any party who appears pro se shall file with the party's appearance or with the party's initial pleading, an address where notices and papers can be served. Said party shall notify the Clerk within fourteen (14) days of any change of address."

[9]     The Court dismissed without prejudice Civil Action No. 12-4177 by Order dated August 13, 2012.

[10]     Counts VII (negligence) and VIII (negligent supervision) were dismissed pursuant to a stipulation of the parties on February 21, 2013.

- Count IV: § 1983 Supervisory Liability (against Northampton defendants)
- Count V: Intentional Infliction of Emotional Distress (against Northampton defendants and Serrano)
- Count VI: Assault and Battery (against defendants Kelly and Serrano)
- Count IX: State Civil Conspiracy (against defendants Kelly, Piccone, Lamont, and Serrano)

## III.   LEGAL STANDARD

A court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is material when it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support a claim. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (citations omitted). The party asserting a fact "must support the assertion by . . . citing to particular parts of material in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A).

## IV.   DISCUSSION

### A.   § 1983 Claims — Counts I through IV

42 U.S.C. § 1983 provides, in part, that:

> [e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of a State or Territory. . . subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

This statute does not create substantive rights; rather, it provides a remedy for violations of rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a § 1983 claim, a plaintiff must demonstrate that a person acting under color of state law caused a deprivation of a right secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

### 1.      Eighth Amendment Claim – Count III

Farrell claims that defendants Kelly and Lamont violated his Eighth Amendment right to be free from cruel and unusual punishment by instigating and facilitating defendant Serrano's attack against him. The Court concludes that Farrell has raised a genuine dispute of material fact as to this claim with respect to Kelly but not with respect to Lamont.

Where the injury experienced by a prisoner is at the hands of another prisoner, § 1983 liability may be imposed on prison officials "if there was intentional conduct, deliberate or reckless indifference to the prisoner's safety, or callous disregard on the part of prison officials." *Eichelman v. Lancaster Cnty.*, 510 F. Supp. 2d 377, 389 (E.D. Pa. 2007) (quoting *Davidson v. O'Lone*, 752 F.2d 817, 828 (3d Cir. 1984)) (internal quotation marks omitted). "To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must demonstrate that (1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health

and safety, and (3) the defendant-official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

In this case, the Court concludes that Farrell has raised a genuine dispute as to whether Kelly instigated and facilitated Serrano's assault on Farrell, thus creating a substantial risk of serious harm that resulted in Farrell's injuries. First, Farrell has produced circumstantial evidence that links Kelly to Serrano and to the attack, namely: (1) Farrell's testimony that he witnessed Kelly having friendly conversations with Serrano prior to the incident, (2) Farrell's testimony that he saw Kelly speaking with Serrano just before the attack, and (3) the fact that Kelly released Farrell from his cell and left the cell block just minutes before the attack occurred.

Second, Farrell has raised a genuine dispute as to whether Serrano had any motive, apart from currying favor with corrections officers, to attack Farrell. Northampton defendants contend that Serrano spontaneously attacked Farrell because he was screaming and disrupting Serrano as he tried to "preach his Islamic faith" inside his cell and had annoyed Serrano on other occasions. However, Farrell testified that he had no prior contact with Serrano and that he was walking up the cell block at the time of the attack because he heard someone calling his name. (Farrell Dep. Tr. 63:8, 65:23–66:6.) Additionally, a factfinder could reasonably conclude that Serrano's attack was not spontaneous but was actually pre-planned based on Torres's statement that Serrano approached him the day before the attack to see if he or his "Latin Kings friends" could provide him with a shank. (Pl. Resp. in Opposition, Ex. B at NCP001040.)

Finally, Farrell has presented evidence to support an inference that Kelly was motivated to facilitate the attack in retaliation for Farrell filing a grievance against Kelly's friend and colleague, Piccone, just a few weeks before Serrano's attack, namely: (1) that Kelly knew about

the April 3, 2011 incident because he and Piccone took Farrell to the medical unit afterwards; (2) that Kelly and Piccone were friendly with each other and that on April 3, 2011 they were laughing and smiling about Farrell's injuries; and (3) that, after Serrano's attack, Kelly and Piccone, on separate occasions, harassed Farrell for filing his *pro se* Complaint against Kelly and Northampton County. (*See* Pl. Resp. in Opposition, Ex. E (report of NCP Investigator Christopher Naugle describing Farrell's contention that Piccone harassed him at a Wawa while he was on parole for filing his lawsuit against Kelly); *id.* Ex. D (report of NCP Investigator Naugle describing Farrell's allegations that Kelly threatened him over the prison intercom for filing his lawsuit).)

Taken together, the Court concludes that Farrell's evidence provides a sufficient basis for a reasonable factfinder to determine that Kelly facilitated the attack against Farrell in violation of Farrell's Eighth Amendment rights. The Court thus denies the Motion for Summary Judgment as to Count III against defendant Kelly.

With respect to the claim against Corrections Officer Lamont, however, Farrell has not produced evidence to demonstrate that Lamont was present prior to or during Serrano's attack on Farrell, had any opportunity to protect Farrell from attack, or had any other connection to the attack. Accordingly, the Court grants the Motion for Summary Judgment as to Count III against defendant Lamont.

### 2.    Civil Conspiracy — Count II

Farrell avers that defendants Kelly, Piccone, Lamont, and Serrano conspired to violate his Eighth Amendment right to be free from cruel and unusual punishment by arranging Serrano's attack against him. The Court concludes that Farrell has raised a genuine dispute of material fact

with respect to this claim against defendants Kelly and Serrano but not as to defendants Piccone or Lamont.[11]

In order to make out a claim for conspiracy under § 1983, a plaintiff must demonstrate "(1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Eichelman*, 510 F. Supp. 2d at 392. To demonstrate the existence of a conspiracy, "plaintiff must present evidence of an agreement — the *sine qua non* of a conspiracy" as it is "not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Id.* at 393 (quoting *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997)) (internal quotation marks omitted).

The Court determines that Farrell has presented enough evidence to raise a genuine dispute as to whether Kelly entered into an agreement with Serrano to attack Farrell. In particular, a reasonable factfinder could infer that Kelly and Serrano entered into an agreement based on Farrell's testimony that, just minutes before the attack, Kelly was speaking with Serrano and then released Farrell from his cell. Thus, the Court concludes that the record supports a reasonable inference that Kelly and Serrano agreed to enter into a conspiracy involving state action,[12] and that the conspiracy in turn lead to the attack on Farrell and the deprivation of his Eighth Amendment rights.

---

[11]     Serrano has not filed a motion for summary judgment as to Count II.

[12]     As Kelly was carrying out his official responsibilities as a corrections officer, he was acting under color of state law for purposes of § 1983 in entering into this agreement with Serrano. As to Serrano, the Court concludes that he was acting "under color of" state law for purposes of § 1983 to the extent that he was engaged in a conspiracy with NCP corrections

However, Farrell has not presented evidence to show that either Piccone or Lamont had any connection to Serrano or the attack, or that they engaged in any activity with Kelly that would demonstrate their intent to enter into an agreement to attack Farrell. For these reasons, the Court grants the Motion for Summary Judgment with respect to Count II as to Piccone and Lamont and denies the Motion as to Count II with respect to Kelly.[13]

### 3.    *Monell* Liability — Count I

Farrell brings claims against Northampton County and defendants Kelly, Piccone, Stoffa, Meyers, Buskirk, Sweeney, and Lamont in their official capacities for the municipality's allegedly deficient policies, which he contends lead to Serrano's attack on him and the deprivation of his constitutional rights.[14] At the outset, the Court notes that the official capacity claims as to defendants Kelly, Piccone, Stoffa, Meyers, Buskirk, Sweeney, and Lamont are redundant of the claim against Northampton County, and thus the Court grants the Motion for Summary Judgment with respect to Count I against those defendants. *See Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 263 n.2 (S.D.N.Y. 2006). The Court proceeds to address Count I as to defendant Northampton County only.

---

officers to deprive Farrell of his constitutional rights. *See Tower v. Glover*, 467 U.S. 914, 920 (1984) (concluding that "an otherwise private person acts under color of state law when engaged in a conspiracy with state officials to deprive another of federal rights.").

[13]    In his Amended Complaint, Farrell also alleges that Kelly and Piccone entered into a conspiracy to coerce him into dropping his *pro se* Complaint in violation of his First Amendment rights. (Am. Compl. ¶ 139.) Although Farrell has presented evidence that, on separate occasions, Kelly and Piccone made harassing statements to him about his lawsuit, he has not presented evidence from which a factfinder could reasonably conclude that they entered into an agreement to deprive Farrell of his constitutional rights. Thus, the Court dismisses Count II to the extent that it is based on this theory.

[14]    Serrano is also named in this count, apparently in error.

11

Municipalities such as Northampton County are "persons" who may be liable under § 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). To establish a § 1983 claim against a municipality, a plaintiff must demonstrate (1) a constitutional injury (2) that was caused when the municipality took action pursuant to a custom or policy. *Id.* at 694; *see also Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

A government policy is made when "a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Beck v. City of Phila.*, 89 F.3d 966, 971 (1996) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)) (internal quotation marks omitted). In contrast, a course of conduct may be considered a "custom" when, "though not authorized by the law, such practices of state officials are so permanent and well-settled as to virtually constitute law." *Id.* (quoting *Andrews*, 895 F.2d at 1480) (internal quotation marks omitted). Custom may be established by evidence of the policymaker's knowledge and acquiescence in a course of action. *Id.* Furthermore, the municipality's execution of this policy or custom must be the "moving force" behind a plaintiff's injury, meaning that a plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (citations omitted).

The Third Circuit has found that liability can be imposed on a municipal entity where the alleged policy, practice, or custom "concerns a failure to train or supervise municipal employees" by showing "that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir.1999) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). "A

pattern of similar constitutional violations by untrained [or unsupervised] employees is ordinarily necessary to demonstrate deliberate indifference," although such a pattern may not be necessary where the consequences of the training or supervision failure are "highly predictable." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (citing *Brown*, 520 U.S. at 409).

Farrell contends that his Eighth Amendment rights were violated by a municipal policy or custom of deliberate indifference to inmate-on-inmate violence facilitated, encouraged, or instigated by corrections officers and Northampton County's failure to supervise corrections officers to address this issue. In support of his claim, Farrell points to two cases against Northampton County and its municipal officers, *Tarboro v. Northampton Cnty.* (E.D. Pa., Civ. Action No. 10-964) and *Mucha v. Boehm* (E.D. Pa., Civ. Action. No. 11-624), both of which involved similar allegations as the present case. In *Tarboro* and *Mucha*, the plaintiff-prisoners alleged, *inter alia*, that corrections officers unlocked their cell doors at the behest of other inmates in order to facilitate those inmates' attacks on plaintiffs.

The Court determines that a reasonable factfinder could rely on these lawsuits, both of which were filed prior to Serrano's attack on Farrell,[15] to conclude that Northampton County officials were aware of a pattern of corrections officers facilitating and encouraging inmate-on-inmate attacks, *see Beck*, 89 F.3d at 973 (concluding that written complaints were sufficient for a reasonable jury to infer the municipality's knowledge of police officer's allegedly unconstitutional conduct); were deliberately indifferent to this risk in failing to effectively

---

[15]     The alleged incident in *Tarboro* occurred in and around mid-2008 and plaintiff Tarboro filed his complaint in March 2010; the alleged incident in *Mucha* occurred in January 2009, and plaintiff Mucha filed his complaint in January 2011.The cases settled in 2011 (*Tarboro*) and 2012 (*Mucha*).

supervise its corrections officers; and that this failure to supervise lead to the violation of Farrell's Eighth Amendment rights by defendant Kelly. For these reasons, the Court concludes that Farrell has raised a genuine dispute of material fact with respect to his *Monell* claim, and thus the Court denies Northampton defendants' Motion for Summary Judgment as to Count I against defendant Northampton County.

### 4.    Supervisory Liability — Count IV

Farrell next brings a claim for supervisory liability under § 1983 against all Northampton defendants in their individual capacities. As with his *Monell* claim, Farrell claims that Northampton defendants, acting in supervisory roles, were aware of a pattern of inmate-on-inmate violence facilitated, encouraged, or instigated by corrections officers, that they were deliberately indifferent in failing to supervise corrections officers to address this issue, and that their deliberate indifference created an environment of impunity that lead to the violation of Farrell's Eighth Amendment rights.

Although Farrell brings his supervisory liability claim against all Northampton defendants, the Court determines that the claim is properly brought against defendants Buskirk, Meyers, Sweeney, and Stoffa. There is no evidence in the record to show that defendants Kelly, Piccone, or Lamont held supervisory positions at NCP such that they were responsible for deficient supervision of corrections officers. Nor is a supervisory liability claim properly brought against a municipal entity like Northampton County. Thus, the Court grants the Motion for Summary Judgment as to Count IV against defendants Northampton County, Kelly, Piccone, and Lamont.

The Court concludes that Farrell has raised a genuine dispute of material fact as to his supervisory liability claim against defendants Buskirk, Meyers, Sweeney, and Stoffa. To hold a supervisor liable under § 1983 for an Eighth Amendment violation, a plaintiff must identify a supervisory policy or procedure that the supervisor defendant failed to implement and demonstrate that: "(1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure." *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 319 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015).

First, Farrell has presented evidence that these defendants held the highest supervisory positions within the Northampton County corrections system during the time relevant to this action: Stoffa served as Northampton County Executive; Meyers served as Northampton County Director of Corrections; Buskirk served as Acting Warden of NCP; and Sweeney served as Deputy Warden of NCP. Second, a factfinder could reasonably conclude based on the filing of the *Tarboro* and *Mucha* actions that these defendants were aware that there was a deficient procedure in place for supervising corrections officers and that this deficiency created an unreasonable risk that inmates would suffer constitutional injuries; that they were deliberately indifferent in failing to address these deficiencies; and that their deliberate indifference allowed an environment of impunity to develop at NCP that lead to the attack on Farrell and the violation of his Eighth Amendment rights. For these reasons, the Court denies Northampton defendants'

15

Motion for Summary Judgment as to Count IV against defendants Buskirk, Meyers, Sweeney, and Stoffa.

### B.     State Law Claims — Counts V, VI, and IX

#### 1.     Intentional Infliction of Emotional Distress — Count V

Farrell next contends that Northampton defendants and Serrano intentionally acted to inflict severe emotional distress on him based on the alleged conduct described above. The Court first concludes that defendant Northampton County and defendants Kelly, Piccone, Lamont, Stoffa, Meyers, Buskirk, and Sweeney, sued in their official capacities, are entitled to immunity under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA") as to this claim. The PSTCA immunizes municipalities and their employees acting in their official capacities from liability for state-law tort claims, and none of the eight exceptions for this grant of immunity enumerated in the Act are applicable to this case. *See* 42 Pa. Cons. Stat. Ann. §§ 8541, 8542(b); *see also Milbourne v. Baker*, No. 11-1866, 2012 WL 1889148, at *4 (E.D. Pa. May 23, 2012) (DuBois, J.). Accordingly, the Court grants the Motion for Summary Judgment as to Count V against all Northampton defendants sued in their official capacities.

The PSTCA does not shield an employee from liability in his individual capacity where his conduct constitutes a "crime, actual fraud, actual malice, or willful misconduct." 42 Pa. Cons. Stat. Ann. § 8550. "The term 'willful misconduct' is synonymous with the term 'intentional tort.'" *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006). In this case, there is no evidence that defendants Buskirk, Meyers, Sweeney, Stoffa, Lamont, or Piccone, sued in their individual capacities, were actively involved in Serrano's attack on Farrell, and thus Farrell cannot establish that they engaged in willful misconduct against him. *See Knight v. Simpson*, No. 08-0495, 2008

WL 1968762 (M.D. Pa. May 2, 2008) (reaching the same conclusion). Accordingly, defendants Buskirk, Meyers, Sweeney, Stoffa, Lamont, and Piccone are entitled to immunity under the PSTCA, and the Court grants the Motion for Summary Judgment as to Count V against these defendants in their individual capacities.

As to defendant Kelly, however, the Court determines that Farrell has raised a genuine dispute of material fact with respect to whether Kelly is liable to Farrell for intentional infliction of emotional distress ("IIED") and thus is not entitled to immunity in his individual capacity under the PSTCA. The Court also concludes that Farrell has raised a genuine dispute of material fact with respect to his IIED claim against defendant Serrano.[16] The tort of intentional infliction of emotional distress is defined under Pennsylvania law as one in which "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Shaner v. Synthes*, 204 F.3d 494, 507 (3d Cir. 2000). Courts are wary of allowing recovery for claims of IIED and liability will only be found where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Esposito v. Galli*, No 04-475, 2006 WL 2322487, at *15 (M.D. Pa. Aug. 9, 2006) (quoting *Fox v. Horn*, 2000 WL 49374, at *9 (E.D. Pa. 2000)). To establish an IIED claim under Pennsylvania law, a plaintiff must present "objective proof supported by competent medical evidence that the plaintiff actually suffered the claimed distress." *Id.*

---

[16]     Serrano has not filed a motion for summary judgment as to Count V.

As discussed in Parts IV(A)(1)–(2), Farrell has presented evidence from which a factfinder could reasonably conclude that defendant Kelly, a corrections officer with a duty to protect Farrell, conspired with defendant-prisoner Serrano to attack Farrell. The Court determines that this conduct is sufficiently outrageous to support Farrell's IIED claim. *See, e.g.*, *Doe v. Allegheny Cnty.*, No. 10-1761, 2013 WL 1290686, at *9 (W.D. Pa. Mar. 27, 2013) (finding that defendant intentionally engaged in extreme and outrageous conduct when he sexually assaulted plaintiff in the course of delivering medical care while she was detained in jail). Furthermore, the Court concludes that the evidence of the conspiracy and the severity of the attack could reasonably support a finding that the conduct was intentionally inflicted to cause Farrell severe emotional distress. Finally, Farrell has produced his medical records at NCP, which demonstrate that he met with mental health clinicians at NCP several times in the months following the attack and was prescribed medication to treat anxiety and depression in June 2011 and October 2011. (Pl. Resp. in Opposition, Ex. L.) The Court determines that Farrell's medical records provide competent evidence from which a factfinder could reasonably conclude that he suffered severe emotional distress resulting from the attack.

For these reasons, the Court denies the Motion for Summary Judgment as to Count V against defendant Kelly in his individual capacity.

### 2.      Assault and Battery — Count VI

Farrell claims that Kelly and Serrano instigated an assault and battery against him. The

Court concludes that Farrell has raised a genuine dispute of material fact with respect to this

claim as to defendants Kelly and Serrano.[17]

Under Pennsylvania law, "assault is an intentional attempt by force to do an injury to the

person of another, and a battery is committed whenever the violence menaced in an assault is

actually done, though in ever so small a degree, upon the person." *Glass v. City of Phila.*, 455 F.

Supp. 2d 302, 365 (E.D. Pa. 2006) (quoting *Renk v. City of Phila.*, 537 Pa. 68, 641 A.2d 289, 293

(1994)). "An assault requires both the actor's intent to place the individual in imminent

apprehension of harmful or offensive contact and the individual's actual imminent

apprehension." *Id.* at 365–66. Furthermore, a defendant is liable for harm resulting to a third

person from the tortious conduct of another if the defendant, *inter alia*, "gives substantial

assistance to the other in accomplishing a tortious result and his own conduct, separately

considered, constitutes a breach of duty to the third person." *Sovereign Bank v. Valentino*, 914

A.2d 415, 420 (Pa. Super. Ct. 2006) (quoting Restatement (Second) of Torts § 876).

In this case, Farrell has presented sufficient evidence to raise a genuine dispute as to

whether Kelly, acting in his capacity as a corrections officer, instigated and facilitated an assault

and battery by Serrano against Farrell. As such, the Court determines that a factfinder could

reasonably conclude that Kelly provided substantial assistance to Serrano in his allegedly

tortious conduct, in contravention of Kelly's duties as a corrections officer to protect Farrell. For

---

[17]      Serrano has not filed a motion for summary judgment as to Count VI.

these reasons, the Court denies the Motion for Summary Judgment with respect to this claim as to Kelly.

### 3.      State Civil Conspiracy — Count IX

Farrell further claims in Count IX that defendants Serrano, Kelly, Lamont, and Piccone engaged in a conspiracy to attack him in violation of his rights under Pennsylvania law.[18] A claim for civil conspiracy under Pennsylvania law is similar to a civil conspiracy claim under § 1983. Under Pennsylvania law, plaintiff must show "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008).

As discussed above with respect to Farrell's § 1983 civil conspiracy claim, Farrell has presented evidence from which a factfinder could reasonably conclude that there was an agreement between Serrano and Kelly to attack Farrell and that they took steps to accomplish the unlawful act; there is no evidence that either Piccone or Lamont was involved in this incident. Therefore, the Court grants the Motion for Summary Judgment as to Count IX against Piccone and Lamont but denies the Motion respect to Count IX against Kelly.

## V.      CONCLUSION

For these reasons, the Court grants in part and denies in part Northampton defendants' Motion for Summary Judgment, as follows:

- Count I: The Motion is granted as to Count I against defendants Kelly, Piccone, Stoffa, Meyers, Buskirk, Conklin, Sweeney, and Lamont, and denied as to Count

---

[18]      Serrano has not filed a motion for summary judgment as to Count IX.

I against defendant Northampton County;

- Count II: The Motion is granted as to Count II against defendants Piccone and Lamont, and denied as to Count II against defendant Kelly. The Motion is also granted as to Count II to the extent that it is based on a theory that defendants Kelly and Piccone entered into a conspiracy to coerce Farrell to drop his *pro se* Complaint in violation of his First Amendment rights;

- Count III: The Motion is granted as to Count III against defendant Lamont, and denied as to Count III against defendant Kelly;

- Count IV: The Motion is granted as to Count IV against defendants Northampton County, Kelly, Piccone, Lamont, and Conklin, and denied as to Count IV against defendants Stoffa, Meyers, Buskirk, and Sweeney;

- Count V: The Motion is granted as to Count V against defendants Northampton County, Piccone, Stoffa, Meyers, Buskirk, Conklin, Sweeney, and Lamont in their official and individual capacities. The Motion is granted as to Count V against defendant Kelly in his official capacity, and denied as to Count V against defendant Kelly in his individual capacity;

- Count VI: The Motion is denied as to Count VI; and

- Count IX: The Motion is granted as to Count IX against defendants Piccone and Lamont, and denied as to Count IX against defendant Kelly.

An appropriate order follows.